IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **WAYNE WILLIAMS,** | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.: RWT-12-1616 |
| | * | |
| **WARDEN FRANK B. BISHOP,** *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | *** | |

## <u>MEMORANDUM OPINION</u>

Before this Court is a Motion to Dismiss or for Summary Judgment ("Motion") filed by Correctional Defendants Warden Frank B. Bishop, Jr., Security Chief Michael P. Thomas, Fiscal Chief Donna L. Stigile, Correctional Dietary Manager (CDM) Lance Harbaugh, Lt. Rodney O. Likin, Sgt. Phillip D. Merling, Sgt. Christopher D. Bingaman, Sgt. James E. Krumpach, C.O. II Codey K. Linn, C. O. II Floyd P. Benson, C.O. II Ryan M. Harper, C.O.II Anthony D. Foor, C.O. II Brett A. Wilburn, C.O. II Sean P. Schiebel, C.O. II Marlin E. Randall, C.O. II William L. Logsdon, C.O. II Matthew J. Smith, C.O. II Matthew J. Davis, C.O. II Jeremiah L. Fontaine, Correctional Case Management Specialist II (CCMS II) David M. Bittinger, Correctional Case Management Manager (CCMM) James E. Tichnell, and Correctional Case Management Specialist II (CCMS II) Stephen W. Helmick (ECF No. 85).[1]  The Court has reviewed the Motion, related memoranda, and applicable law.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons presented below, the Court GRANTS the Motion.

---

[1] Defendant Kathy Jacobs has not been served with the Complaint.

**<u>Background</u>**

Plaintiff alleges that, in retaliation for filing civil rights claims against them, Correctional Defendants placed him in imminent danger by housing him with cellmates they knew or had reason to know would harm him.  Compl. 1 (ECF No. 1).  In April 2012, Plaintiff states he wrote Warden Bishop and Housing Unit Manager Lt. Likin regarding his cell assignment but did not receive a reply.  *Id.* at 2.  In May 2012, Plaintiff asserts he again wrote Warden Bishop and Lt. Likin to explain that he wished to be housed with inmate Taylor.  *Id.*  On May 3, 2012, Plaintiff's request was refused and Sgt. Merling notified him that he was not entitled to housing with an inmate of his choosing.  *Id.*

Plaintiff alleges a "campaign of harassment" ensued and included adverse conditions of confinement, personal injuries, and food tampering (ECF No. 23).  On May 26, 2012, Plaintiff states Sgt. Bingaman knowingly put him in danger by moving him into a cell occupied by inmate Kelson, who assaulted him on June 15, 2012.  Compl. 3.  On June 27, 2012, Plaintiff claims that C.O. Wilburn, C.O. Davis, C.O. Benson, C.O. Foor, and Sgt. Merling used excessive force to move him into a cell with inmate Bell and subsequently refused him medical care for his injuries (ECF Nos. 34, 50, 52, 64).  Plaintiff also claims various ailments due to the lack of shoes, which he states went missing during the cell changes (ECF No. 56).  In addition, Plaintiff insists that C.O. Smith spit in his food on January 24–25 and February 1–2, 2013; that C.O. Fontaine routinely limits his shower time to only nine minutes; that C.O. Fontaine has denied him outside recreation; that C.O. Randall refused him a cell with a window that opens; that C.O. Linn erroneously sanctioned him three-days loss of recreation privileges; that C.O. Schiebel, C.O. Smith, and C.O. Fontaine denied him medical treatment for the flu; that Correctional Defendants working the

8 a.m. – 4 p.m. shift threatened to stop his mail; and that he was generally refused his state-issued clothing order (ECF Nos. 31, 61, 66).

Plaintiff further alleges that Correctional Case Management Specialist Bittinger and Fiscal Chief Stigile failed to provide account information, which prevented him from pursuing his habeas corpus petition in the Circuit Court for Allegany County (ECF No. 33).  Plaintiff states he attempted to submit this grievance through the Administrative Remedy Procedure ("ARP") process, but claims he was unable because Correctional Defendants refused to sign (ECF Nos. 33, 43, 55).

## Standard of Review

### I.      Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6), the purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  The dismissal for failure to state a claim upon which relief may be granted does not require the defendant to establish "beyond doubt" that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.  *Id*. at 563.  The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### II.     Motion for Summary Judgment

Pursuant to Fed. R. Civ. P. 56(a), summary judgment requires that the court grant the motion if the movant shows that "there is no genuine dispute as to any material fact" and that "the movant is

entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (citing *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not

whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact, which exists if the nonmoving party fails to make sufficient showing on an essential element of the case for which he has the burden of proof.  *See Celotex Corp.*, 477 U.S. at 322–23. Therefore, on those issues for which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

<u>Analysis</u>

## I.      Plaintiff Neither Satisfied the Administrative Exhaustion Requirement Nor Showed that Correctional Defendants Forfeited Exhaustion as a Defense

The Court must first examine Correctional Defendants' assertion that several of Plaintiff's claims should be dismissed due to his failure to exhaust available administrative remedies.  The Prisoner Litigation Reform Act ("PLRA") provides in part that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. §1997e(a) (2012).  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the

administrative process.  *Chase*, 286 F. Supp. 2d at 530; *see also Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where the plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the ARP process provided by the Maryland Department of Public Safety and Correctional Services ("DPSCS") to its prisoners.  If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction.  If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO").  *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.  Administrative remedies must be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

The Fourth Circuit has held that an administrative remedy "is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) and *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006)).

Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *Moore*, 517 F. 3d at 725 (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

Scott Oakley, Executive Director of the Inmate Grievance Office, confirms Plaintiff did not exhaust available administrative remedies regarding his claims that Correctional Defendants should have escorted him to the medical department due to his flu-like symptoms and after being bitten by his cellmate; that C.O. Linn denied him recreation; that there was saliva on his food tray; that C.O. Wilson assaulted him on January 26, 2012; and that he was deprived of shoes. Mot. Ex. 68. The Court, therefore, must dismiss Plaintiff's allegations, unless Plaintiff can show that he has satisfied the PLRA administrative exhaustion requirement or that Correctional Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

## II. No Evidence Exists to Suggest that Alleged Failure to Protect was Sufficiently Serious or that Correctional Defendants Acted with Deliberate Indifference

To the extent Plaintiff alleges that his altercations with his cellmates were occasioned by Correctional Defendants' failure to protect him from a known risk of harm, his claim fails. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court noted that

> Prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement. They must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must protect prisoners from violence at the

> hands of other prisoners. . . .  Being violently assaulted in prison is simply not part of
> the penalty that criminal offenders pay for their offenses against society.

*Id*. at 825, 834 (internal quotations and citations omitted).  In a failure to protect claim, a prisoner

must show that the deprivation alleged is objectively "sufficiently serious" and that the official has

acted with "deliberate indifference" to inmate health or safety.  *Id*. at 825–26 (citing *Wilson v. Seiter*,

501 U.S. 294, 298 (1991)).  Deliberate indifference entails something more than negligence—

Plaintiff must establish that Correctional Defendants exhibited deliberate or callous indifference to a

specific known risk of harm.  *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987).  "[A] prison

official cannot be found liable under the Eighth Amendment for denying an inmate humane

conditions of confinement unless the official knows of and disregards an excessive risk to inmate

health or safety, the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*,

511 U.S. at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339–40 (4th Cir. 1997).

Correctional Defendants affirm that they reviewed Plaintiff's enemy alert screen prior to

each of Plaintiff's housing moves to ensure they never placed Plaintiff in a cell with a documented

enemy (ECF No. 66, Exs. 55, 56).  Furthermore, evidence provided to the Court demonstrates that

no information existed to indicate placing Plaintiff in a particular cell with a particular inmate

created a risk of harm to Plaintiff, and that Plaintiff has a history of attempting to manipulate his

housing to get a single cell.  *Id.*  Plaintiff requested single cell status and was directed to contact the

medical department regarding a medical need to be housed alone.  Unsuccessful in securing a

medical order for single cell status, Plaintiff began to initiate altercations with his cellmates.  Mot.

Exs. 22–26, 29, 37, 39.  No evidence exists to suggest that Correctional Defendants were aware of

facts from which an inference could be drawn that Plaintiff was subjected to a substantial risk of serious harm, nor is there any evidence that Defendants actually drew such an inference.

**III.    Plaintiff's Belief that His Medical Conditions Necessitate He Be Housed in a Single Cell, Amounts to a Difference of Opinion Not a Constitutional Right**

Prisoners do not have a constitutional right to access programs or to demand housing in one prison or cell rather than another absent a showing of significant hardship.  "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."  *Meachum v. Fano*, 427 U.S. 215, 224 (1976); s*ee also Sandin v. Conner*, 515 U.S. 472, 484 (1995) (requiring an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" as prerequisite to creation of a constitutionally protected liberty interest).

A prisoner's strong desire to be in a single cell, based on his belief that his medical conditions cause difficulties with cellmates, does not entitle him to housing in a single cell unless medical providers have made a directive for a single cell based on a medical need.  In this case, there has been no such directive, and thus the Plaintiff's claim amounts to a mere difference of opinion over the preferred course of medical treatment.  *See DeFranco v. Wolfe*, 2008 WL 596735, at *12 (W.D. Pa. Mar. 4, 2008).  The record evidence demonstrates that Plaintiff's medical providers did not direct he be housed in a single cell and thus Correctional Defendants did not err by refusing to accommodate this request.

**IV.    Evidence of Record Does Not Support Plaintiff's Contention that Correctional Defendants Used Excessive Force**

The Court determines whether force used by prison officials was excessive by inquiring if that "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6–7 (1992); *see also Boone v. Stallings, et al.*, No. 14-6521, 2014 WL 4457253, at *6 (4th Cir. Sept. 11, 2014) (quoting *Whitley v. Albers*, 475 U. S. 312, 320–21 (1986)) (remanding where the record did "not clearly establish whether the officers acted 'maliciously and sadistically for the very purpose of causing harm' or 'in good faith effort to maintain or restore discipline'"). Factors relevant to the ultimate determination include the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley*, 475 U. S. at 321. The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 556 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 37.

### A.    January 26, 2012 Incident

Correctional Defendants would be entitled to summary judgment on Plaintiff's claim of excessive force on January 26, 2012, even if the Court did not dismiss it for failure to exhaust. Plaintiff alleges that on January 26, 2012, C.O. Wilson and other officers forced him into a cell and slammed his head against the floor. In his ARP, Plaintiff alleged that only C.O. Wilson assaulted him in retaliation for Plaintiff's desire to be housed on a bottom bunk. Mot. Ex. 8, at 12. During Plaintiff's interview by the Internal Investigative Unit (IIU) Investigator he was unable to state the date of the alleged assault and added that Sgt. Merling applied a tether to his handcuffs and pulled him off his feet. *Id*. at 13–14. During the interview, Plaintiff offered that he was forced into a cell

with someone with whom he did not want to share a cell.  *Id*.  Plaintiff also indicated that inmate Cohen was present during the assault.  *Id*. at 14.

No institutional reports—such as use of force, matters of record, or serious incident reports—exist to corroborate any altercation that may have occurred with Plaintiff on January 26, 2012.  The IIU Investigator interviewed inmate Cohen, who reported that on January 26, 2012 Plaintiff refused to be locked back into his cell, that Plaintiff fell to the floor when the correctional officers pushed Plaintiff inside, and that the correctional officers then entered the cell to remove Plaintiff's handcuffs.  *Id*. at 15.  The medical department examined Plaintiff two days after the alleged incident and did not note any injuries.  *Id*. at 14, 38–39.

Sgt. Merling denied any physical contact with Plaintiff on January 26, 2012.  C.O. Davis indicated that the date of the incident was one of his regular relief days and that he did not recall any incident with Plaintiff.  *Id*. at 17.  C.O. Wilson stated that he recalled Plaintiff refusing to be locked in his cell and that Plaintiff was placed on the cell floor and his handcuffs removed.  C.O. Wilson recalled Plaintiff not resisting.[2]  The IIU Investigator also interviewed C.O. Davis, who denied any physical altercation with Plaintiff.  The IIU Investigator concluded that no evidence existed to support Plaintiff's claim.  *Id*. at 26.

Plaintiff admits that he refused a lawful order to lock into his cell.  Evidence of record suggests that any force used against him was tempered and only the amount necessary.  In addition, Plaintiff suffered no demonstrable injury as a result.  The evidence of record, therefore, does not

---

[2] C.O. Benson was also interviewed.  He recalled an incident where a tether was used due to Plaintiff's refusal to surrender the handcuffs.  He indicated that he and Sgt. Merling entered Plaintiff's cell, attached the tether, and then backed away through the door, removing the handcuffs through the door slot.  He believed the incident occurred in February or March of 2012, and he indicated no use of force report was written because Plaintiff was compliant.  Mot. Ex. 8, at 21 (ECF No. 85).

support Plaintiff's contention that Correctional Defendants used excessive force against him on January 26, 2012.

**B.      February 1, 2012 Incident**

Plaintiff's complaint that Correctional Defendants used excessive force against him on February 1, 2012 also fails for lack of supporting evidence.  Sgt. Bingaman avers that on February 1, 2012, while conducting a strip search, Plaintiff failed to comply with directives and moved toward him in an aggressive manner.  Mot. Ex. 10.  C.O. Smith came to Sgt. Bingaman's aid and, when Plaintiff continued to resist efforts to subdue him, pepper sprayed Plaintiff in order to gain control.  *Id*.  Correctional Defendants were then able to restrain Plaintiff and escorted him to the medical department without further incident.  *Id*.

An adjustment hearing was held on February 6, 2012, and Plaintiff was found guilty of inmate rule violation 101 for assault or battery on staff and violation 400 for disobeying a direct lawful order.  Mot. Ex. 11.  The record evidence demonstrates that the force Correctional Defendants used was appropriate to the situation and to maintain control and security of the institution.  In addition, it was only after Plaintiff continued to resist and act aggressively toward Correctional Defendants that they deployed pepper spray—Correctional Defendants first attempted to gain compliance by verbally directing and physically restraining Plaintiff.  *See, e.g.*, *Boone*, 2014 WL 4457253, at *5–6 (remanding where, unlike here, a genuine dispute existed about whether the prisoner acted in a manner that necessitated force and about whether officers deployed pepper spray before or after the need for force dissipated).  Other than the pepper spray exposure, there is no evidence to indicate that Plaintiff suffered any injury as a result of the incident.  Mot. Exs. 10–11.  Plaintiff cannot prevail on his claim that Correctional Defendants used excessive force against him on February 1, 2012.

### C.      June 27, 2012 Incident

C.O. Foor avers that during the formal count on June 27, 2012, he saw Plaintiff punch inmate Bell in the head and torso.  Mot. Ex. 29.  C.O. Foor states that he ordered Plaintiff to stop the assault, but that Plaintiff refused to comply.   After Plaintiff refused a second order to stop the assault, C.O. Foor pepper sprayed Plaintiff in order to gain control.   Plaintiff then stopped his assault on inmate Bell and both were escorted to the medical department without further incident.  *Id*.  The Correctional Defendants involved maintain that they used only the amount of force necessary to gain Plaintiff's compliance with lawful orders, and that after the incident they took Plaintiff to the medical department to be treated for pepper spray exposure.  Mot. Exs. 29–32, 35–37.

An adjustment hearing was held on July 2, 2012 and Plaintiff was found guilty of inmate rule violation 102 for assault or battery on an inmate.  Mot. Ex. 37.   Any force used by Correctional Defendants was in an effort to maintain security of the institution and to cease Plaintiff's assault on another inmate.  The record evidence demonstrates that the force Correctional Defendants used was appropriate to the situation and to maintain control and security of the institution.   In addition, Correctional Defendants first attempted to gain compliance by verbally directing Plaintiff to stop his assault on his cellmate, and only deployed pepper spray when he failed to stop.  *See, e.g.*, *Iko v. Shreve*, 535 F.3d 225, 239–40 (4th Cir. 2008) (finding genuine issue of material fact where, unlike here, officer deployed several bursts of pepper spray on a docile prisoner).  Other than pepper spray exposure, there is no indication in the record that Plaintiff suffered any injury as a result of the incident.  Plaintiff cannot prevail on his claim that Correctional Defendants used excessive force against him on June 27, 2012.

**V.      Plaintiff Neither Provides Support for His Property Claims Nor Avails Himself of the Available Post-Deprivation Remedies**

Plaintiff's claims regarding lost property, delays in receiving state-issued clothing, and lack of shoes from June 27 to August 15, 2012 are without merit.  In the case of lost or stolen property, sufficient due process is afforded a prisoner if he has access to an adequate post-deprivation remedy.  *See Parratt v. Taylor*, 451 U. S. 527, 542–44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U. S. 327 (1986).  The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy, as Plaintiff may avail himself of remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office.  *Cf. Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982) (dealing with personal injury rather than property loss, *Junker's* holding that sufficient due process is afforded through post deprivation remedies available in the Maryland courts is applicable here because it relies on *Parratt* in dismissing the plaintiff's due process claim).

Evidence of record reflects that Plaintiff's property was not lost as alleged, that Plaintiff's request for additional clothing was not processed because Plaintiff did not timely submit his request, and that Correctional Defendants dispute Plaintiff was ever without shoes.  Plaintiff's property inventory details that he had two pairs of shoes during the complained of period, and Correctional Defendants state that they promptly provided Plaintiff a new pair of outdoor shoes despite their uncertainty as to what had happened to his old pair.  Plaintiff provides no support for his property claims, and has neglected to avail himself of the post-deprivation remedies available to him in the Maryland court system to rectify the situation.

**VI.     Discomforts Experienced by Plaintiff in His Conditions of Confinement Did Not Amount to Cruel and Unusual Punishment**

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements: (1) the deprivation of [a] basic human need was *objectively* sufficiently serious and (2) *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original and citations omitted). Absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, a punishment cannot properly be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (*citing Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010) (*quoting Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting

from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003).

Plaintiff is unable to satisfy either prong of a conditions claim. Plaintiff cannot demonstrate any injury arising as a result of the conditions complained of—the sealed window in his cell, food tampering, shortened showers, and intermittent denial of recreation. Plaintiff indicates that he suffered a "stuffy nose" as a result of the sealed window in his cell. He indicates that he experienced flu-like symptoms when he believed his food had been tampered with. He does not assert, much less demonstrate, any injury as a result of the allegedly shortened showers or interference with his recreation. The injuries Plaintiff complains of do not arise to the level of a serious or significant injury. Moreover, Plaintiff's description of the conditions were not so severe that Correctional Defendants could be charged with "fair warning that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F. 3d 292, 313 (4th Cir. 2006). The discomforts experienced by Plaintiff may have been restrictive and harsh, but did not amount to cruel and unusual punishment—especially where Plaintiff is unable to show significant, serious physical or psychological injury.

16

**VII.    Plaintiff Fails to Demonstrate Actual Injury as a Result of Any Irregularity with the Processing of His Mail Sufficient to Deny Him Access to the Courts**

To the extent Plaintiff's allegations regarding a failure to provide inmate account statements may be construed as denial of access to the courts, the claim fails.  Prisoners have a constitutionally protected right of access to the courts.  *See Bounds v. Smith*, 430 U. S. 817, 821 (1977).  However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).  "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'"  *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis,* 518 U.S. at 355).  "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches."  *Lewis*, 518 U.S. at 349.

Plaintiff alleges that he was unable to "pursue" a habeas corpus petition in the Circuit Court for Allegany County because case managers failed to provide him account information (ECF No. 33).  Plaintiff's allegation is belied by the record, which demonstrates that he did receive his account information.  Mot. Exs. 50–54.  Moreover, Plaintiff has failed to demonstrate how any lack of access to his account statement prevented him from pursuing his habeas corpus claim or how his state court habeas proceedings would have benefited from the information.  Although Plaintiff

alleges Correctional Defendants did not provide legal materials, he has failed to demonstrate an actual injury from the denial of those materials.

Plaintiff's complaint that Correctional Defendants tampered with his legal mail likewise fails. Prisoner claims regarding legal mail are typically analyzed as access to court claims. To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. Plaintiff has not advised the Court of any actual injury or specific harm that he suffered as a result of the alleged mishandling of his outgoing legal mail. Likewise, to state a claim based on delay or non-delivery of legal mail, a prisoner must allege adverse consequences as the basis for the allegation that delay or non-delivery deprived him of meaningful access to courts. *See Lewis*, 518 U.S. at 349; *see also Morgan v. Montanye*, 516 F.2d 1367 (2d Cir. 1975) (single interference did not violate the Sixth Amendment). Plaintiff has failed to demonstrate actual injury as a result of any irregularity with the processing of his mail.

Regarding Plaintiff's claim that incoming legal mail was improperly handled, isolated instances of mishandling of inmate mail do not constitute valid constitutional claims. *Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) (confirming isolated incident of mishandling does not show actionable pattern or practice). Occasional incidents of delay or non-delivery of mail do not rise to a constitutional level. *Gardner v. Howard*, 109 F.3d 427, 430–31 (8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990). The only evidence Plaintiff offers of injury are conclusory statements that the conduct of correctional staff violated his constitutional rights. Without greater specificity, Plaintiff's claims that Correctional Defendants denied him access to the courts fail.

18

**VIII.   Failure to Follow a Prison Directive or Internal Regulation, By Itself, Does Not Give Rise to a Federal Claim**

Plaintiff complains that he was not provided a property inventory sheet in compliance with DPSCS policies and procedures (ECF Nos. 53, 56). The adoption of procedural guidelines, however, does not give rise to a liberty interest. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim if constitutional minimums are met. *Id.* Thus, the alleged failure of Correctional Defendants to follow internal DPSCS regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987).

**IX.   Plaintiff Fails to Demonstrate, and the Record Evidence Contradicts, Plaintiff's Allegations of Retaliatory Action and Harassment**

Plaintiff claims that Correctional Defendants undertook all of the aforementioned events in retaliation for his having filed complaints against them. In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation are insufficient to state claim).

The evidence of record not only fails to suggest Correctional Defendants acted in the manner alleged, but contradicts Plaintiff's allegations of retaliation. The evidence shows that Plaintiff was not knowingly transferred or placed in any cell with a known enemy and that force used against him was in response to his having attacked other inmates or staff. Correctional Defendants transferred

Plaintiff to the de-escalation cell due to his disruptive behavior and Plaintiff received full and fair hearings as to each disciplinary charge lodged against him.  Plaintiff has a documented history of non-compliance with staff and combative and manipulative behavior in order to get his chosen housing accommodations.  Additionally, Correctional Defendants aver that they did not tamper with Plaintiff's property, mail, ARPs, food, housing assignment, showers, or recreation as alleged. Correctional Defendants deny harassing or retaliating against Plaintiff.  Mot. Exs. 1–3, 10, 29–35, 43, 46, 49–52, 54–55.   "In the prison context, we treat [claims of retaliation] with skepticism because every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct."  *Cochran v. Morris*, 73 F.3de 1310, 1317 (4th Cir. 1996). Plaintiff cannot prevail on his claim that Correctional Defendants undertook a "campaign of harassment" and retaliation against him.

## Conclusion

Plaintiff's Motions to Amend his Opposition (ECF Nos. 92, 93) shall be GRANTED. Plaintiff's Motions to Amend the Complaint (ECF Nos. 94, 95, 96, 101, 107) shall be DENIED. Plaintiff's Complaint against Defendant Kathy Jacobs shall be DISMISSED, and the Motion to Dismiss or for Summary Judgment filed by the remaining Correctional Defendants shall be GRANTED.  A separate Order follows.


September 16, 2014                                    _____/s/_____
                                                                          Roger W. Titus
                                                                          United States District Judge